FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 20 2017 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JESSIE BELL,

                Plaintiff,

   -against-

WYANDANCH UNION FREE SCHOOL
DISTRICT, WYANDANCH UNION FREE
SCHOOL DISTRICT BOARD OF EDUCATION,
and DR. MARY JONES, individually and in her
official capacity,

                Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

15-CV-0772

(Wexler, J.)

APPEARANCES:

JONATHAN A. TAND & ASSOCIATES, P.C.
By:   Jonathan A. Tand, Esq.
990 Stewart Avenue, Suite 225
Garden City, New York 11530
Attorney for Plaintiff

MORRIS DUFFY ALONSO & FALEY
By:   Kenneth E. Pitcoff, Esq. and Courtney F. Chenette, Esq.
2 Rector Street, 22nd floor
New York, New York 10006
Attorneys for Defendants

WEXLER, District Judge:

      Plaintiff Jessie Bell commenced this action against defendants Wyandanch Union Free School District (the "District"), Wyandanch Union Free School District Board of Education (the "Board"), and Dr. Mary Jones, the District Superintendent, alleging that because of his participation in legal proceedings, he was retaliated against and constructively discharged from his employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the First Amendment of the U.S. Constitution. Currently before

the Court is Defendants' motion for summary judgment. *See* Motion, Docket Entry ("DE") [48]. For the reasons set forth herein, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff was employed by the District as a Junior ROTC ("JROTC") instructor at Wyandanch High School. JROTC instructors were not members of the teachers' union, but rather were contract employees retained on year-to-year agreements. The Board, consistent with New York State Law, passed annual resolutions setting Plaintiff's compensation. Neither the Superintendent nor an individual member of the Board has the authority to set plaintiff's salary absent a resolution by the Board. These resolutions were then reflected in salary letters sent to Plaintiff, who signed the letters below the statement "I accept the above salary and conditions of employment." After the Board's resolution each year, an employment contract was executed.

For the 2011-12 school year, the Board resolved to pay plaintiff $105,000. For the 2012-13 school year, plaintiff's salary was reduced to $80,000. The reduction was based upon student allegations of misconduct by Plaintiff. The $25,000 salary decrease from the 2011-12 to the 2012-13 school years does not form the basis of this lawsuit.

For the 2013-14 school year, the Board voted to raise plaintiff's salary to $90,000. A salary letter dated July 1, 2013 and signed by then-Superintendent Pless Dickerson reflected the Board's resolution to pay him $90,000, and Plaintiff signed this letter on September 16, 2013. In November 2013, Plaintiff executed an Employment Agreement that, inconsistent with the earlier Board resolution and the salary letter, set his salary for the 2013-14 school year at $105,000.[1] The words "BOARD OF EDUCATION WYANDANCH UNION FREE SCHOOL

---

[1] The parties generally refer to the contractual salary as $105,000 despite the fact that the amount in the Employment Agreement was $105,353. To avoid confusion, the Court adopts the parties' characterization of his salary amount as $105,000.

2

DISTRICT" appear below the agreement's clauses and above the signatures. The Employment Agreement was signed by Plaintiff, Superintendent Dickerson, and Board President Nancy Holliday, and countersigned and attested by Stephanie Howard, the District Clerk. Despite the fact that no second resolution was passed regarding Plaintiff's salary for the 2013-14 school year, he was paid at the contractual rate of $105,000.

In January 2014, Dr. Jones testified that she became Acting Superintendent for the District. By letter dated April 24, 2014, Plaintiff requested review and renewal of his contract earlier than usual, asking that it be renewed before the expiration of his current contract on June 30, 2014. Sometime between April and June 2014, Dr. Jones learned that Plaintiff was being compensated in excess of the $90,000 amount set by Board resolution.

On or about June 3, 2014, Plaintiff testified in a civil action on behalf of Larry McCord, a former Wyandanch UFSD employee who was suing the District. Defendant Jones also attended that deposition. The next day, June 4, 2014, Plaintiff met with Jones. The parties dispute whether Jones called the meeting or Plaintiff requested it earlier that day. During this meeting, Jones informed Plaintiff of the discrepancy between the salary amounts in the Board resolution, salary letter, and employment agreement. By vote on June 27, 2014, the Board resolved to compensate plaintiff $90,000 for the 2014-15 school year. Although Jones testified that she had no role in Plaintiff's contract or salary for that year, the resolution states that the Board's decision was made "upon the recommendation of the Acting Superintendent of Schools."

Defendants took no steps to demand repayment by Plaintiff of the $15,000 discrepancy between the Board's resolution and the employment agreement for the 2013-14 school year.

In March 2015, notified his employer in writing that he intended to resign effective June 30, 2015. Using a standard form that lists reasons for resignation, he selected "Retire" and

3

"Medical" as reasons. He did not select the reason "Contract not renewed/Adverse Action" and none of the additional documents submitted by Plaintiff to the District's Human Resource Department referenced a reason for his retirement. Prior to retiring, he did not ask what his compensation would be for the following 2015-16 school year.

## II. DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). In determining a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). After the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348 (1986)).

The Court has reviewed the parties' submissions and concludes that issues of fact exist that preclude summary on the retaliation claim. The issues include, *inter alia,* whether the setting of Plaintiff's salary for the 2014-15 school year constituted an adverse employment action, whether the Board had a non-retaliatory reason for setting his compensation for that

4

school year, and whether retaliation for Plaintiff's testimony was the cause of the Board's decision. Accordingly, Defendants' motion to dismiss the retaliation claim is denied.

Plaintiff also claims that his resignation amounted to a constructive discharge. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003). Whether the work environment is intolerable is assessed objectively from the viewpoint of a reasonable person in plaintiff's shoes. *See Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011) (noting that "[w]orking conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."). Here, Plaintiff argues that he was forced to resign because "Defendants created intolerable working conditions by way of a reduction in Plaintiff's salary, contrary to Plaintiff's reasonable expectations of a pay raise." Pl.'s Memorandum of Law in Opposition at 10. Plaintiff does not, however, cite any conduct occurring between the Board's resolution setting his salary in June 2014 and his submission of retirement papers in March 2015. "[W]hen a plaintiff remains in a position after conduct which is allegedly designed to force him or her to resign, it undermines any claim of intolerable working conditions." *Butts v. N.Y. City Dep't of Hous. Pres. and Dev.*, No. 00 CV 6307, 2007 WL 259937, at *20 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 307 F. App'x 596 (2d Cir. 2009). In short, Plaintiff has pointed to no evidence that would allow a reasonable jury to conclude that his retirement over eight months after the Board's decision was tantamount to a constructive discharge. *Cf. Scott v. Harris Interactive, Inc.*, 512 F. App'x 25, 28 (2d Cir. 2013) (issue of material fact existed where salary reduction of almost 32% was coupled with changes in title and responsibilities, and there was evidence of repeated comments suggesting plaintiff resign).

5

Accordingly, Defendants' motion to dismiss this claim is granted.

## IV. CONCLUSION

Defendants' motion for summary judgment is denied as to Plaintiff's retaliation claim, and granted as to the constructive discharge claim. The parties are directed to confer and to, by **July 7, 2017,** electronically file a letter proposing trial dates in November and December 2017.

SO ORDERED.

/s/ LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       June 20, 2017